IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| OAHU TRANSIT SERVICES, INC., dba THEBUS, | CIVIL NO. _____ |
| Petitioner, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| HAWAII TEAMSTERS AND ALLIED WORKERS, LOCAL 996, | |
| Respondent. | |

## MEMORANDUM IN SUPPORT OF MOTION

I.  **INTRODUCTION/JURISDICTION**

Petitioner OAHU TRANSIT SERVICES, INC., dba THEBUS ("OTS,"

"Company," or "Petitioner") moves for an order from this Court confirming the

Decision and Award issued by Arbitrator Daniel Bent on October 22, 2012,

("Decision and Award")[1] following the arbitration hearing with Respondent

HAWAII TEAMSTERS AND ALLIED WORKERS LOCAL 996 ("Union" or

"Respondent") on grievances filed by the Union on behalf of Scot Park ("Park" or

collectively "Union/Park) pursuant to a Collective Bargaining Agreement ("CBA")

agreed to by OTS and the Union, effective July 1, 2009 to June 30, 2013.[2]  This

motion is brought under Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185

---

[1]  See Exhibit "2" to Declaration of Ralph Faufata ("Faufata Decl.").

[2]  See Exhibit "1" to Faufata Decl.

("Section 301" or "LMRA"), and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.

This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 185, since: 1) OTS is an employer in an industry affecting commerce, 2) the Union is a Hawaii labor organization representing OTS employees in the District of Hawaii, 3) the CBA does not specify that an arbitration award should be entered in any other court, and 4) the Decision and Award was made in the District of Hawaii.[3]

II. **STATEMENT OF FACTS**

A. **Procedural Background**

OTS is a domestic nonprofit corporation registered to do business in, and running bus operations in, the State of Hawaii. Faufata Decl. at ¶3. Employees of OTS, such as bus operators, are represented by the Union. Faufata Decl. at ¶4. Park was a bus operator employed at OTS and a member of the Union. Id. On June 30, 2008, OTS and the Union entered into a CBA, effective from July 1, 2009 to June 30, 2013. CBA, attached hereto as Exhibit "1" to Faufata Decl.; Faufata Decl. at ¶5. Among other things, the CBA outlines a three-step procedure allowing

---

[3] Faufata Decl. at ¶¶3-4; CBA at § 10.2, attached as Exhibit "1" to Faufata Decl.; Decision and Award p.40, attached as Exhibit "2" to Faufata Decl.

the Union and OTS employees to contest any "unjust disciplinary action or improper treatment," referred to as a "grievance." CBA § 9.1.

When a "grievance is alleged by . . . the Union on behalf of the individual employee," the first step of this procedure is to present the grievance "in writing to the Vice President of the department affected (or the Vice President's designee) within ten (10) working days of the occurrence of the alleged grievance." CBA § 9.3.1. "If the response of the Vice President does not adjust the grievance to the satisfaction of the grievant, and grievant or the Union desires to proceed further, the grievance shall be processed in accordance with Step 2." CBA § 9.3.1.

Step 2 of the procedure grants the grievant/Union five working days to present the grievance to the OTS President (or his designee), who in turn has five (5) days to issue a written response. Id. at § 9.3.2.

> If the response of the President of the Company does not adjust the grievance to the satisfaction of the grievant, and/or the Union and the grievant or the Union desire to proceed further, a written demand for arbitration may be made in accordance with procedures set forth under Step 3.

Id.[4]

After a grievant/Union submits a written demand for arbitration, OTS and the Union have a specified amount of time to select an arbitrator from a

---

[4] Step 3 provides that "[w]ithin ten (10) working days . . . following conclusion of Step 2, the grievant or the Union may make a demand for arbitration of the grievance . . . " Id. at §9.3.3 (emphasis added).

predetermined panel.  Id. at §§ 10.1-10.2.  The arbitrator selected has "no power to

alter, amend, nullify, modify, add to, or subtract from the express terms of the

[CBA]."  Id. at § 10.2.

> The arbitrator shall make a decision, **which shall be final and binding on
> all participants,** in light of the whole record and shall decide the case upon
> the weight of all substantial evidence presented.  The decision and award of
> the arbitrator shall include findings of fact and conclusion of law.

Id. at § 10.5 (emphasis added).

Although the CBA requires that the decision be final and binding, it does not

specify a particular court where the Decision and Award should be confirmed, nor

does it specify what law governs review of the arbitration.

### B.     Grievances, Arbitration, And Related Civil Lawsuit

During his tenure of employment at OTS, Park was involved in several

incidents that each led to disciplinary action by OTS.[5]  Faufata Decl. at ¶6.  The

Union on behalf of Park filed five (5) grievances disputing each of the assessed

discipline arising from these incidents.  Id.

After Steps 1 and 2 of the grievance procedure, the Union on behalf of Park

submitted Demands for Arbitration ("Demands"), CBA §§ 9.3.1, 9.3.2 and 9.3.3;

---

[5]  These incidents occurred over a two-year period stretching from March 30, 2010,
to May 14, 2011.  Faufata Decl. at ¶6.

<u>Faufata Decl.</u> at ¶6[6], on the grievances with OTS.  The Union/Park contended

essentially that OTS did not have just cause to assess Park the various disciplinary

actions relating to the incidents.  <u>Decision and Award</u>, p. 2, Ex. "1" of <u>Faufata</u>

<u>Decl.</u>  The Union and OTS agreed to the selection of Arbitrator Daniel A. Bent and

to have him address all five (5) of the grievances in one proceeding (the

"Arbitration Proceeding").  <u>Declaration of Wesley M. Fujimoto</u> ("<u>Fujimoto Decl.</u>")

at ¶2; <u>Faufata Decl.</u> at ¶8.

    Prior to the Arbitration Proceeding, Park filed separate lawsuits entitled

<u>Scot Park v. OTS; Stanford Shiroma; Ralph Nishimura; Lulani Santiago; Aileen</u>

<u>Black,</u>CV 10-00445 DAE.KSC filed on July 29, 2010; <u>Scot Park v. OTS; Louis</u>

<u>Navarro; Ralph Faufata</u>, CV 11-00598 DAE.BMK, filed on October 2, 2011; and

<u>Scot Park v. OTS; Ralph Faufata</u>, CV 12-00303 DAE.BMK, filed on May 29,

2012, all in the United States District Court for the District of Hawaii.[7]  The nearly

identical lawsuits claim that while working at OTS Park was allegedly the victim

of racial harassment, racial discrimination, and unlawful retaliation under 42

---

[6]  These Demands were made at separate times on or about June 29, 2012,
March 2, 2011, June 21, 2011, August 4, 2011, and January 19, 2012.  <u>Faufata</u>
<u>Decl.</u> at ¶6.

[7]  CV 10-00445 DAE.KSC was dismissed with prejudice through a stipulation of
the parties, and CV 11-00598 DAE.BMK and CV 12-00303 DAE.BMK were
consolidated, also by stipulation and order, and all pleadings to be filed and
docketed in CV 11-00598 BMK.  <u>Fujimoto Decl.</u> at ¶3.

U.S.C. § 1981, 42 U.S.C. 2000(e) or Title VII of the Civil Rights Act of 1964

("Title VII"), and HRS § 378 and that the alleged adverse disciplinary actions were

due to racial discrimination rather than for just cause.

### C.    Decision And Award

At the Arbitration Proceeding, the Union/Park and the Company were

represented by counsel, made arguments, and presented numerous witnesses and

documentary evidence before Arbitrator Bent on the disputed disciplinary actions.

See Decision and Award, p.1, Ex. "1" of Faufata Decl.  After the conclusion of the

Arbitration Proceeding, the Union and OTS submitted post-hearing arbitration

briefs on September 10, 2012, with the submission date extended through mutual

agreement of OTS and the Union.  Id. at 2.  Following an agreement between OTS

and the Union to extend the date by which Arbitrator Bent needed to issue the

Decision and Award pursuant to the CBA, on October 22, 2012, Arbitrator Bent

issued his Decision and Award, concluding in OTS's favor that OTS had just cause

to assess each disciplinary action against Park, and denying all of Park's

grievances.  Id. at 38; Faufata Decl. at ¶9; Fujimoto Decl. at ¶4; see also Exhibit

"3" to Fujimoto Decl.  Neither the Union nor Park has filed in this Court or in State

court a motion to vacate the Decision and Award.  Faufata Decl. at ¶10; Fujimoto

Decl. at ¶5.

III.   **ARGUMENT**

OTS respectfully requests that pursuant to the FAA this Court confirm Arbitrator Bent's Decision and Award.  No motion to vacate, modify or correct the Decision and Award has been filed by the Union/Park in federal or state court and any such motion filed now would be untimely.  Further, even if the Court reviews the Decision and Award despite the absence of a timely motion to vacate by the Union/Park, court review of an arbitration award is extremely deferential. Confirmation of the Decision and Award is therefore proper.

A.   **Confirmation Is Proper Since Any Motion to Vacate Filed Now by the Union/Park Would Be Untimely**

"Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  "[F]ailure to move to vacate the arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award."  Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., Inc., 628 F.2d 1023, 1025 (7th Cir. 1980); Carpenters 46 Northern California Counties Conference Bd. v. Meddles, 535 F. Supp. 775, 777 (N.D. Cal. 1981) ("Under the Federal Arbitration Act, a motion to vacate an arbitration award must be served on the adverse party, the petitioner in this case, within three (3)

months from the date the arbitration award is filed. . . Accordingly, the Petition to

Vacate must be dismissed").

There are sound policy reasons for requiring strict adherence to the

prescribed time period for filing of a motion to vacate.  Specifically,

> Where there is varying and sometimes lengthy time in which to challenge an
> arbitration award, the interests in finality are thwarted, and the disappointed
> party is not forced to seek prompt ultimate resolution of the dispute so that it
> can be forever laid to rest and the labor relationship can proceed on fresh
> footing.

Gas Workers Local No. 80 v. Michigan Consol. Gas Co., 503 F. Supp. 155, 157

(E.D. Mich. 1980)).

In the instant case, this lengthy Arbitration Proceeding should be "forever

laid to rest."  The Demands for arbitration for the five (5) grievances in which OTS

disciplined Park were filed as early as March 2, 2011.  Faufata Decl. at ¶6.  The

lengthy Arbitration Proceeding was held on May 23, May 24, May 25, June 1, and

June 8, 2012.  Id. at ¶¶6, 8.  Following both parties' presentations of evidence,

testimonies of numerous witnesses, closing arguments and the submission of post-

arbitration briefs, the Arbitrator issued a "final and binding" Decision and Award

on October 22, 2012.  Id. at ¶9; Fujimoto Decl. at ¶4; Decision and Award at p.2,

attached as Exhibit "2" to Faufata Decl.; CBA, § 10.5, attached as Exhibit "1" to

Faufata Decl.

Now, well-within the prescribed year-period from the date the Decision and

Award was issued, Petitioner has timely filed its Motion to Confirm Arbitrator

Bent's Decision and Award. 9 U.S.C. § 9 ("at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award."). The Union/Park, on the other hand, failed to file a timely motion to vacate, modify, or correct the Decision and Award in this or any other court. Dinger v. Anchor Motor Freight, Inc., 501 F. Supp. 64, 68 (S.D.N.Y. 1980) ("An application to vacate or modify an arbitral award must be made within three months of receipt of the decision under federal law, 9 U.S.C. s 12, and within 90 days under New York law"). Therefore, this Court's confirmation of the Decision and Award is proper.

**B. Alternatively, Should the Court Choose to Review the Decision and Award Despite the Failure of the Union/Park to File a Timely Motion to Vacate, the Court's Review of an Arbitration Award under Section 301 of the LMRA or the FAA is Extremely Deferential and Weighs Heavily in Favor of Confirmation**

Even if the Court should decide to review the Decision and Award despite the Union/Park's failure to timely file a motion to vacate, there are no grounds for vacatur here under any appropriate standard as the Court's review under either Section 301 of the LMRA or the FAA is extremely deferential to the Arbitrator's Decision and Award.

**1. Federal Common Law Based on Section 301 and National Labor Law Policy**

Section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." Textile Workers v.

Lincoln Mills, 353 U.S. 448, 451 (1957); Burnside v. Kiewit Pac. Corp., 491 F.3d

1053, 1058-60 (9th Cir. 2007); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S.

399, 403 (1988). The Supreme Court has said that the "substantive law to apply in

suits under § 301(a)" is fashioned:

> from the policy of our national labor laws. The Labor Management
> Relations Act expressly furnishes some substantive law. . . . [But other
> problems] will be solved by looking at the policy of the legislation and
> fashioning a remedy that will effectuate that policy. The range of judicial
> inventiveness will be determined by the nature of the problem. Federal
> interpretation of the federal law will govern, not state law. . . .It is not
> uncommon for federal courts to fashion federal law where federal rights are
> concerned.

Lincoln Mills, 353 U.S. at 456-457. Thus the federal common law governing the

enforcement of arbitration awards under Section 301 originates from: a) Section

301 itself and the policy behind Section 301, b) general common law and

consistent state law, and c) federal law, primarily adopted from the FAA. Based

on these sources, a court applying Section 301's federal common law to review an

arbitration award would lean heavily towards deferring to an arbitrator's judgment.

> a.    **Section 301 and National Labor Policy Favors**
>       **Confirmation**

The policy behind Section 301 and national labor policy in general heavily

favors deference to an arbitrator's decision. Section 301 explicitly provides that

> [f]inal adjustment by a method agreed upon by the parties is hereby declared
> to be the desirable method for settlement of grievance disputes arising over
> the application or interpretation of an existing collective-bargaining
> agreement.

The Labor Management Relations Act of 1947, 61 Stat. 154, 29 U.S.C. § 173(d);

AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649-650

(1986).  Thus, there is a "federal policy in favor of enforcing arbitration awards

[that] is particularly strong with respect to arbitration of labor disputes." Supreme

Oil Co., Inc. v. Abondolo, 568 F.Supp.2d 401, 406 (S.D.N.Y.2008).  Courts'

deference to arbitrators owes itself primarily to the fact that

> [b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987).

Court deference to an arbitrator not only honors the parties' chosen method

for resolving disputes, but it is also based on the sound policy that arbitrators are

more capable of preserving the delicate relationship between unions and employers

> The parties expect that [the arbitrator's] judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished . . . The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S 574, 581-

82 (1960).  Thus, "it is the arbitrator's construction which was bargained for; and

so far as the arbitrator's decision concerns construction of the contract, the courts

have no business overruling him because their interpretation of the contract is different from his." Id. at 599.  In particular, courts

> have no business weighing the merits of [a] grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.

Steelworkers v. American Mfg. Co., 363 U.S. 564, 567-568 (1960).

Since arbitrators have no obligation to the court to give their reasons for an award,

> mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. . . [and] a court should not vacate an award merely because it disagrees with the arbitrator's construction of the agreement.

Id. at 598.  In other words, "a court should not reject an award on the ground that the arbitrator misread the contract." United Paperworkers, 484 U.S. at 38.  Even if the Court is convinced that the "[the arbitrator] committed serious error," the award should not be vacated so long as the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority." Id. at 38–39.

In sum, the federal common law derived from Section 301 and national labor law policy generally requires upholding an arbitration award as long as it "draws its essence from the [CBA]." United Steelworkers, 363 U.S. at 597-598 (award upheld if arbitrator "stays within the areas marked out for his consideration"). Vacatur is therefore only appropriate where arbitral decisions "simply reflect the

arbitrator's own notions of industrial justice." United Paperworkers, 484 U.S. at 36, 38.

### b.   Limited Common Law Grounds for Vacating an Award

The general common law of contracts also may provide a source for fashioning Section 301's federal common law.  For example, courts are permitted in limited situations the discretion to

> not enforce a collective-bargaining agreement that . . . as interpreted would violate "some **explicit** public policy" that is "**well defined and dominant**, . . . ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"

United Paperworkers, 484 U.S. at 43.  (internal citations and quotation omitted, emphasis added).  Thus, while general common law may apparently be used to fashion Section 301's federal common law, its application is extremely limited.

### c.   Applying FAA as Guidance Strongly Supports Confirmation

Federal courts have a longstanding practice of "look[ing] to the [FAA] for guidance in labor arbitration cases."  Id. at 40, n. 9; International Chemical Workers Union v. Columbian Chemicals Co., 331 F.3d 491, 494 (5th Cir. 2003) (when reviewing an arbitration award involving a CBA and arising under Section 301, courts may look to FAA for guidance).  This practice, furthermore, has been explicitly approved by the Supreme Court.  American Federation of Television and Radio Artists, AFL-CIO v. WJBK-TV (New World Communications of Detroit,

<u>Inc.</u>), 164 F.3d 1004, 1009 (6th Cir. 1999) ("the Supreme Court . . . expressly

recognized that federal courts may look to the FAA for guidance in labor

arbitration cases in the wake of the holding in <u>Lincoln Mills</u>. Thus, . . . we may

find guidance in the FAA's provisions . . .").

    Under the FAA, "[i]t is beyond peradventure that . . . a federal court may

vacate or modify an arbitration award only if that award is completely irrational,

exhibits a manifest disregard of law, or otherwise falls within one of the grounds

set forth in 9 U.S.C. §§ 10 or 11." <u>Lapine Technology Corp. v. Kyocera Corp.</u>,

130 F.3d 884, 888 (9th Cir.1997) (internal quotation marks omitted).  These narrow

grounds found in §§ 10 or 11 are: (1) fraud in the procurement of the agreement;

(2) arbitrator corruption; (3) arbitrator misconduct or exceeding of powers; and (4)

corrections for material miscalculations or imperfection of form.  9 U.S.C. §§ 10,

11.  Furthermore, the FAA requires that any "[n]otice of a motion to vacate,

modify, or correct an award must be served upon the adverse party or his attorney

within three months after the award is filed or delivered."  9 U.S.C. § 12.

    "[U]nless the award is vacated, modified, or corrected" under said grounds

and within said three-month period, Section 9 requires "that a federal district court

'**must** grant a confirmation order.'" <u>G.C. & K.B. Invs., Inc. v. Wilson</u>, 326 F.3d

1096, 1104 (9th Cir.2003) (emphasis added by Ninth Circuit) (brackets omitted).

This requirement of confirmation reflects "the basic purpose of the Federal

Arbitration Act [] to overcome courts' refusals to enforce agreements to arbitrate."[8]

Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 270 (1995);

Doctor's Assocs., Inc. v. Cassarotto, 517 U.S. 681, 682 (1996) (stating that the

purpose of FAA is to ensure that private agreements to arbitrate are enforced).

Looking to the FAA for guidance in fashioning Section 301's federal common law

is a time-honored practice approved by the Supreme Court, and weighs heavily in

favor of judicial deference to an arbitrator's decision.

    In sum, a court's review of an arbitration award by applying Section 301's

federal common law, as found in Section 301's policy, general common law and

consistent state law, and the FAA, strongly supports confirmation of an award.

    **2.**    **Based on Recent U.S. Supreme Court Decisions, the FAA Rather Than Federal Common Law May Govern the Review of an Arbitrator's Award in Labor Disputes**

    While applying the FAA as guidance in Section 301 labor arbitration cases

has long been approved federal court practice, recent Supreme Court cases Circuit

City Stores, Inc. v. Adams, 532 U.S. 105 (2001) and  14 Penn Plaza LLC v. Pyett,

---

[8] The 1924 Senate Report clarified the purpose of the FAA:

> The courts are bound to accept and enforce the award of the arbitrators unless there is in it a defect so inherently vicious that, as a matter of common morality, it ought not to be enforced. This exists only when corruption, partiality, fraud or misconduct are present . . . There is no authority and no opportunity for the court, in connection with the award, to inject its own ideas of what the award should have been.

S. REP. NO. 68-536, note 32, at 4.

556 U.S. 247 (2009) indicate that the FAA now applies directly, i.e., governs, CBAs. Id. Specifically, in Circuit City the Supreme Court expanded the FAA's scope to collective bargaining agreements through its microscopically-narrow reading of the FAA's exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Id. at 106; 9 U.S.C. § 1.

Several years later the Supreme Court in 14 Penn Plaza, similarly though implicitly held that a CBA's arbitration provision was governed by the FAA. Id. at 262. Although 14 Penn Plaza involved a dispute between an individual employee and an employer, if arbitration provisions in CBAs fall within the scope of the FAA, the FAA should apply as well to arbitration of disputes between a union and an employer. Id. at 254; ("Petitioners filed a motion to compel arbitration of respondents' claims pursuant to § 3 and § 4 of the Federal Arbitration Act (FAA) . . . [and] Respondents immediately appealed the ruling under § 16 of the FAA"); Id. at 257 ("the CBA's arbitration provision must be honored."). The Supreme Court's application of the FAA to the CBA and the fact that this was not challenged in the dissenting opinions, clearly support the conclusion that CBAs are governed by the FAA. Id. at 254, 265, 269 n.10.

Summarizing the high standard for qualifying under Sections 10 and 11's narrow grounds, "[i]t is generally held that an arbitration award [being reviewed

under the FAA] will not be set aside unless it evidences a manifest disregard for law." <u>Todd Shipyards Corp. v. Cunard Line</u>, 943 F.2d 1056, 1060 (9th Cir.1991) (internal quotation marks omitted).  Thus, while review under Section 301's federal common law standard is "one of the narrowest standards of judicial review in all of American jurisprudence," direct application of the FAA permits "**the narrowest** review known to the law." <u>Way Bakery v. Truck Drivers Local 164</u>, 363 F.3d 590, 593 (6th Cir. 2004) (emphasis added) (internal citation omitted); <u>ARW Exploration Corp. v. Aguirre</u>, 45 F.3d 1455, 1462 (10th Cir. 1995); <u>Prescott v. Northlake Christian Sch.</u>, 141 F. App'x 263, 270 (5th Cir. 2005) ("the district courts' scope of review of an award by the arbitrator . . . is extremely limited.").

### 3. Arbitrator Bent's Decision and Award Should Be Confirmed

Under any of the possible applicable standards of review of the Decision and Award, Petitioner respectfully requests that this Court issue an order confirming Arbitrator Bent's Decision and Award issued on October 22, 2012. Ex. "1" to <u>Faufata Decl.</u>  Pursuant to Sections 9.3.3 and 9.3.4 of the CBA, the Union submitted timely Demands For Arbitration. <u>Faufata Decl.</u> at ¶6.  Clearly, the required steps in the CBA's grievance and arbitration procedure were followed. Pursuant to Section 10 of the CBA, the Arbitration Proceeding was held on dates between May 23 and June 8, 2012. <u>Faufata Decl.</u> at ¶8.  Then, "in light of the whole record and . . . upon the weight of all substantial evidence presented," on

October 22, 2012, Arbitrator Bent issued his Decision and Award. CBA § 10.5;

Faufata Decl. at ¶9; Decision and Award, p.2 ("all evidence and arguments have

been considered"). This Decision and Award was clearly intended "to be final and

binding on all participants," and concluded that OTS had just cause to assess all its

disciplinary actions against Park and denied all of Park's grievances. Id. Thus, the

parties clearly conformed to the procedural requirements of the CBA. Moreover,

Arbitrator Bent in his Decision and Award acted within the scope of his authority

by not violating the language of the CBA and staying within the specified

contractual limitations. Id. at 37 ("The Arbitrator's role is as a creature of the

CBA . . .The Arbitrator in considering a grievance is to interpret the contract . . .").

Therefore, none of the limited grounds for vacating an award set forth by

FAA §§ 10 or 11 apply here. The CBA was not procured by fraud, nor is there any

evidence whatsoever of corruption, misconduct, exceeding of powers, or material

miscalculation on the part of Arbitrator Bent. Accordingly, application of the FAA

requires that this Court pursuant to 9 U.S.C. § 9 confirm the Decision and Award.

If, however, in spite of two Supreme Court decisions indicating that the

FAA directly governs, this Court should nevertheless find that federal common law

governs the issue of whether the Court should confirm the Decision and Award,

the FAA's important role in Section 301's federal common law still heavily favors

confirmation. As mentioned, none of the aforementioned grounds specified in §§

10 and 11 are present here.  Furthermore, there is no well defined, dominant, and explicit public policy present that would require vacatur of the Decision and Award.  United Paperworkers, 484 U.S. at 43.  Rather, strong public policy in favor of the finality of arbitration decisions and award, and of court deferral to bargained-for arbitrator's judgments, which policy forms the underpinnings of Section 301, is unquestionably preserved by confirming the Decision and Award.

Moreover, far from reflecting his "own notions of industrial justice," the Arbitrator's well-reasoned Decision and Award clearly drew "its essence from the [CBA]."  United Steelworkers, 363 U.S. at 597-598.  Arbitrator Bent explicitly recognized that he had "no power to alter, amend, nullify, add to, or subtract from the express language of the CBA," and that "in considering a grievance [he was simply] to interpret the contract, and if necessary, resolve any ambiguities in the process of interpretation."  Decision and Award, p.37 (internal citations omitted).  Arbitrator Bent simply performed the role that the parties entrusted him to do-- interpret the CBA in light of the grievances.  Therefore, even under Section 301's federal common law, there are no grounds present that would permit a court to vacate the Decision and Award--even if a motion to vacate had been timely filed.

Accordingly, Petitioner respectfully requests that this Court confirm Arbitrator Bent's Decision and Award into a judgment on behalf of OTS.

IV.    **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that this

Honorable Court issue an order confirming Arbitrator Bent's October 22, 2012,

Decision and Award.

DATED:    Honolulu, Hawaii; June 24, 2013.

Ashford & Wriston

WESLEY M. FUJIMOTO
STEVEN R. GRAY
Attorneys for Petitioner

1204358.8